## Jacob Beidler et al.
### v.
## Robert H. Fish.

1.   Joint lessors, liability of.—The fact that a party is a joint lessor with another does not make him responsible for the acts of the latter when attempting to enter the premises by force, unless he participates in or authorizes such forcible acts.

2.   Damages from loss of profits.—Where testimony was admit-

ted which tended to show the loss of profits the plaintiff might have made out of his ice business had not his premises been entered by force, etc. *Held,* that such damage, being special and not the necessary consequence of interrupting the plaintiff's business, should have been specially alleged in the declaration; that the damage arising from loss of profits was too remote and speculative, depending upon many and uncertain contingencies, to form a safe rule by which to measure the amount of recovery in this case.

3. QUESTION OF LAW—INSTRUCTION.—An instruction which submits to the jury the question of law as to what would constitute an unlawful interference with a lessee's possession, is erroneous.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed April 15, 1884.

This is an appeal from a judgment rendered in the court below against Jacob and Henry Beidler and three others, in an action of trespass brought against them by Robert H. Fish, for forcibly entering the plaintiff's store and attempting to expel him therefrom. The declaration contains two counts, the first charging the defendants with assaulting and beating the plaintiff; the second, trespass *quare clausum*. To the first count the defendant pleaded *son assault demesne*, and to the second, justification under the provisions of a lease from the defendants Beidler to the plaintiff, under which the plaintiff was in the possession of the premises at the time of the acts complained of. There was also a plea of not guilty to the whole declaration.

The controversy grows out of an attempt on the part of the Beidlers to re-enter and take forcible possession of said premises after the expiration of the term for which they had been let to the plaintiff. The defendants gave evidence tending to show that the plaintiff was in possession under a lease in writing executed by the Beidlers to the plaintiff, bearing date March 21, 1881, and demising said premises to him for the term of one year from May 1, 1881. After covenanting that the lessee would yield up the premises to the lessors at the expiration of said term, the lease, among other things, contained a covenant to the effect that if default should be made in any of the covenants to be kept by the lessee, the lessors might, at their elec-

Beidler et al. v. Fish.

tion, re-enter with or without process of law and expel the lessee by force.

The acts complained of were committed after the expiration of the year for which the premises were let, and after demand duly made by the defendants for possession, and refusal by the plaintiff to surrender the same.   The plaintiff gave evidence tending to prove the acts complained of in his declaration.   The defendants offered the lease in evidence together with testimony tending to prove its execution.

Among the instructions given on the part of the plaintiff was the following: " The court instructs the jury that this is an action of trespass brought by the plaintiff, Robert H. Fish, against the defendants, Jacob and Henry Beidler, James F. Griffin, Walter D. Dwight and Charles J. Sykes, for forcibly evicting him from the premises described in the declaration, and in order to maintain such action, it is only necessary for the plaintiff to prove that he was in the actual and peaceable possession of the property upon which the trespass is alleged to have been committed, and that the defendants, or some one or more of them, unlawfully interfered with and disturbed the plaintiff in such possession."

There was a jury trial, resulting in a verdict for the plaintiff for $1,500, of which the plaintiff remitted $1,000, and had judgment for $500.   The defendant appealed.

Messrs. E. & A. VAN BUREN, for appellants.

WILSON, J.   The judgment in this case must be reversed on several grounds.   In addition to the two special pleas there was the plea of not guilty by all the defendants.   The jury found them all guilty.

As to the defendant Jacob Beidler, there was an entire absence of any proof to show that he participated, directly or indirectly, in the alleged acts of trespass, or that they were done by his authority or consent.  The fact that he was a joint lessor with Henry Beidler in the lease, does not make him responsible for the acts of the latter when attempting to enter by force, unless he participated in or authorized such forcible acts.

Nor do we find any evidence connecting the defendants Griffin and Dwight with the alleged trespass. All that is shown as to them is that they were, and for some years had acted as the agents of the Beidlers in leasing their buildings and collecting the rents. Neither of them is shown to have been present at the time of the acts complained of, nor to have participated in or authorized the same. As the burden was on the plaintiff to show affirmatively their connection with the transaction complained of, the case as to them was not made out.

The plaintiff was sworn as a witness in his own behalf, and testified against the objection and exception of the defendants as follows:

Q. "What effect, if any, Mr. Fish, did this congregation of people and visits of Mr. Beidler and his friends have, if any, on your business?

Ans. "Why, it prevented people from coming to our premises. Even in the evening they were afraid of being raided. They were afraid of being thrown out. The customers were getting chary.

Q. "How do you know people were afraid to come?

Ans. "Because they told me so, and I have usually had a great many picnics. I was unable to supply them.

Q. "Now I want to know, Mr. Fish, what business of yours was interrupted or stopped in consequence of this raid?

Ans. "I had started previous to this time the ice business. I had built an ice house, and put 225 tons of ice in, and that, of course, was all stopped. I was unable to fill the orders, and I lost a good many of my customers by that, and some parties I had furnished with ice cream for three years past gave me no more orders."

It is apparent that some of this testimony was mere matter of opinion, and some of it only hearsay. Whether the people were prevented from coming to plaintiff's premises, or of being raided, or thrown out, or were getting chary, was only the plaintiff's inference, unless he based his statement upon what people had told him, in which case it was only hearsay.

Again, the evidence, in so far as it tended to show the loss

Beidler et al. v. Fish.

of profits the plaintiff might have made out of his ice business, was incompetent, we think, on two grounds, (1) such damage being special, and not the necessary consequence of interrupting the plaintiff's business, should have been specially alleged in the declaration. 1 Chit. Pl. 395–6; Miles v. Weston, 60 Ill. 361. The averment is that the plaintiff was " deprived of great gains and profits which would have accrued to him, etc." Even if such damages were recoverable, they should have been specifically alleged, to enable the defendants to be prepared for their defense. (2) The damage arising from loss of profits was too remote and speculative, depending upon many and uncertain contingencies, to form a safe rule by which to measure the amount of recovery in a case like the present. The general rule as laid down by Mr. Sedgwick is that in actions for an alleged wrong, aside from cases in which punitive damages are allowable, the recovery is limited to such damages as are the direct or proximate and natural consequence of the act complained of; and this rule prohibits any allowance for damages remotely resulting from the principal illegal act: 1 Sedg. on Damages, Chap. 3; and in the notes to Vicars v. Wilcox, Smith's Lead. Cases, Vol. 2, p. 490, it is said that in cases of tort, unattended by any of those circumstances which call for punitive damages, such as fraud, etc., " the difficulty of laying down any principle upon which the measure of damages is to be ascertained, beyond a strict adherence to the natural and proximate consequences of the act complained of, is confessed to be insurmountable." See also Sutherland on Dam., Vol. 1, Chap. 3, *et seq.*, and numerous cases cited.

The plaintiff's first instruction improperly submitted a question of law to the jury. By it the jury were told that in order to maintain the action it was only necessary for the plaintiff to prove that he was in the actual and peaceable possession of the property upon which the trespass was alleged to have been committed, and that the defendants *unlawfully* interfered with and disturbed the plaintiff in such possession. Neither this nor any other instruction informed the jury what would constitute an unlawful interference. It left the cov-

enants in relation to the retaking of possession, and the other provisions of the lease to be construed in respect to their legal effect by the jury. The court should have informed them as to what facts would or would not, under the terms of the lease, constitute an unlawful interference.

For the errors indicated the judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.